JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant Robert Weaver appeals his conviction following a bench trial. Weaver assigns the following error for our review:
 "I. Whether a guilty verdict is against the manifest weight of the evidence."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Weaver's conviction. The apposite facts follow.
 {¶ 3} On March 24, 2006, the Cuyahoga County Grand Jury indicted Weaver on one count each of aggravated robbery, felonious assault, and kidnapping. All three counts had one and three year firearm specifications attached. On April 10, 2006, Weaver pleaded not guilty at his arraignment. On May 21, 2007, Weaver executed a written, as well as an oral waiver of his right to a jury trial, and a bench trial commenced.
 Bench Trial {¶ 4} At trial, the State presented the testimony of six witnesses including, the victim, Darrell Hall, who testified that he owns a towing company, works for Revelation Auto Sales, and sells cars on his own. Hall testified that on January 25, 2006, he returned home and parked his car at the bottom of the driveway. Hall testified that after he entered the house and proceeded upstairs, he heard a knock on the door. He looked through the window and saw two men standing at the side door. Hall testified that one of the men was six feet tall, brown skinned, and had braided *Page 4 
hair. Hall stated that he could not see the second man's face because the man's back was against the wall.
 {¶ 5} Hall testified that the individuals indicated that they were there to look at a car he had for sale. Hall told them that he would come out and show it to them. Hall testified that on his way outside, he set the alarm and locked the door behind him. Hall testified that once outside, he became suspicious, because the men were not standing by the car that was for sale and he did not see the car they had arrived in. Hall stated that he got a good look at the male with the braided hair.
 {¶ 6} Hall testified that in his rush to come outside, he forgot to bring the keys to the car that was for sale. Hall testified that as he was walking back to the house to retrieve the keys, he glanced behind him, and noticed that the second man was wearing a mask. Hall pretended not to notice the mask. Hall stated that he could only see the masked man's face from his lips down to his chin. Hall testified that when he almost reached the door, the masked man hit him in the head with a pistol, and when he fell to the ground, the two men proceeded to go through his pocket. The men took $27 in cash of Hall's pocket. Hall testified that while the men were going through his pockets, he told them he only sold cars, at which time, the masked man indicated he knew that Hall only sold cars.
 {¶ 7} Hall testified that he believed the masked man's gun jammed, therefore he decided to reach for it. As he attempted to reach for the gun, the man with the *Page 5 
braided hair stated, "If you reach for that gun again, I'm going to shoot you." The two men proceeded to lead Hall into his house, and the masked man stated that they were going to take him into the house, get what he had, and then kill him.
 {¶ 8} Hall testified that when he opened the door, the alarm went off, which startled the two men. Hall began to run away and one of the men fired a shot at him. Hall stated that once the alarm got louder, the two men turned and ran down the driveway. The men entered a green Ford Taurus, which was parked near the corner of East 127th
Street and Harvard Avenue.
 {¶ 9} Hall testified that as the men started to drive away, he ran behind the car to read the license plate. Hall stated he was only able to see the first four characters of the car's temporary license plate. Hall stated that as he was attempting to see the entire license plate, the man with the braided hair opened the door and pointed a gun at him. Hall ducked behind a telephone pole.
 {¶ 10} Hall testified that after the men sped away, he went over to LV's Used Auto Sales, a car lot located nearby. There, he saw Lowell Fryerson, who had previously worked for him as a tow truck driver and a mechanic. Hall told Fryerson about the robbery, and based on their conversation, Hall learned that the masked man might be Weaver.
 {¶ 11} Hall testified that he and Fryerson proceeded to Weaver's home, where they saw the green Ford Taurus parked in the next door neighbor's driveway. Hall *Page 6 
and Fryerson looked in the car and saw the temporary license plate laying in the car. Hall called the police. Hall stated the police went to Weaver's home and spoke with Weaver's mother. The police later went to Hall's home, where they found a .45 caliber shell casing on the driveway.
 {¶ 12} At trial, Fryerson testified that he was previously employed as a tow truck operator and manager of LV Used Auto Sales. Fryerson stated he had previously worked for Hall as a tow truck operator and a mechanic. Fryerson testified that on January 25, 2006, Hall came to LV Used Auto Sales, visibly shaken, with blood shot eyes, and told him that two men had just robbed him. Hall indicated that the men had driven away in a green Ford Taurus.
 {¶ 13} Fryerson testified that when Hall indicated that the men had driven away in a green Ford Taurus, he recalled that Weaver also drove a green Ford Taurus, and also recalled that Weaver had a dispute with Hall concerning the title to a car he had bought from Hall in 2005. Fryerson testified that Weaver had mentioned several times that he wanted to rob Hall, because Hall was late delivering the title to a car. Fryerson stated that on several occasion, Weaver asked when would be a good time to rob Hall. Fryerson stated that, at the time, he did not think Weaver was serious.
 {¶ 14} Fryerson testified that he shared this information with Hall and both of them went to Weaver's home. Fryerson stated that when they arrived at Weaver's home, the green Ford Taurus was parked in the driveway next door, and the *Page 7 
temporary license tag was laying in the car. Fryerson stated that after Hall called the police, Fryerson went back to LV Used Auto Sales.
 {¶ 15} Fryerson testified that Weaver called him several times after the incident and inquired why Fryerson was getting involved. Fyerson testified that he told Weaver that "You brought it on yourself."[1]
 {¶ 16} Officer Daniel Brill of the Cleveland Police Department testified that he recovered a .45 caliber spent shell casing from Hall's driveway. Officer Brill also testified that on January 25, 2006, the ground was lightly covered with snow, but the spent shell casing found on top of the snow was not covered with snow.
 {¶ 17} At the conclusion, the trial court found Weaver guilty on all three counts of the indictment. On May 22, 2007, the trial court sentenced Weaver to a total prison term of six years.
 Manifest Weight {¶ 18} In his sole assigned error, Weaver argues his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 19} In State v. Wilson,[2] the Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows: *Page 8 
 "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins (1997), 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."
 {¶ 20} However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[3] Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction."[4] *Page 9 
 {¶ 21} In the instant case, Weaver contends that only Hall had any direct or specific knowledge relative to his guilt, and Hall's report of a robbery is uncorroborated. We are not persuaded.
 {¶ 22} Hall testified in pertinent part as follows about the identity of the perpetrator:
 "Q. At the time you were robbed, did you know for a fact who was robbing you, who the guy was behind the mask?
 A. Well, at the time when he said what he said, when I said, `All I do is sell cars,' and he said, `Yeah, I know,' I had an idea that — because, I mean, we had argued and he had that certain — the way that smirk was, I never seen nobody with a smirk like him.
 Q. Okay. So you had a good idea who it was.[?]
 A. Right.
 Q. And the after — it was only after you saw the car that you were able to confirm who it was?
 A. Well, after I went up to the car lot and told Mr. Fryerson what happened, he made me aware exactly who it was.
 Q. And then you were sure who it was?
 A. Right.
 Q. And then when you saw the Taurus in the lot, in the driveway —
 A. Correct.
 Q. — that confirmed that it was true? *Page 10 
 A. Right."[5]
 {¶ 23} Here, it is evident that Hall discerned the possible identity of the robber when the masked man replied "Yeah, I know." Hall, who had previously sold Weaver a car, testified that Weaver had been upset about the late delivery of the title, and that a dispute had ensued between them. Thus, it is conceivable that Hall recognized Weaver's voice as a result of their protracted dispute.
 {¶ 24} Hall gained more concrete knowledge of the robber's identity after relating the incident to Fryerson, who indicated that Weaver had talked about robbing Hall. When Hall told Fryerson that the two men had fled in a green Ford Taurus, Fryerson thought it had to be Weaver. Fryerson subsequently led Hall to the green Ford Taurus.
 {¶ 25} The record also indicates that on several occasions, Weaver talked with Fryerson about robbing Hall. Fryerson testified in pertinent part as follows:
 "Q. So prior to this happening, what occurred?
 A. He used to always ask me different things about how much money did he have in his pocket or would it be a good time if I want to rob him or something like that.
 Q. And who would say that to you?
 A. Mr. Weaver. *Page 11 
 Q. And who is he talking about robbing?
 A. Darrell Hall."[6]
 {¶ 26} Nonetheless, Weaver asserts that the alleged incident was a fabrication, and that both Hall's and Fryerson's testimony was not credible. However, the weight to be given the evidence and the credibility of witnesses are primarily issues for the trier of fact.[7]
 {¶ 27} Moreover, Officer Brill testified that they found a .45 spent shell casing in Hall's driveway. Officer Brill also testified that the shell casing was not snow covered, despite the ground being snow covered. The discovery of the spent shell casing in Hall's driveway could lead the average person to conclude that the robbery did take place and that Hall was fired upon.
 {¶ 28} After reviewing the entire record, weighing the evidence, and considering the credibility of the witnesses, we are not persuaded that the trial court clearly lost its way or created such a miscarriage of justice that Weaver's convictions must be reversed. Weaver's conviction was not against the manifest weight of the evidence. Accordingly, we overrule the sole assigned error.
 Judgment affirmed. *Page 12 
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and ANN DYKE, J., CONCUR.
[1] Tr.124.
[2] 113 Ohio St.3d 382, 2007-Ohio-2202.
[3] Thompkins, supra at 387.
[4] Id.
[5] Tr. 83-84.
[6] Tr. 92.
[7] State v. Norman, Cuyahoga App. No. 85903, 2005-Ohio-5979, citingState v. DeHass (1996), 10 Ohio St.2d 230. *Page 1